Beckwith, J.
When the plaintiffs deposited their drafts with the First National Bank, it was upon a contract, implied from the circumstances, custom and course of dealing, to this effect, namely, that the plaintiffs transferred the drafts upon the promise of the bank that it would honor the checks of the plaintiffs, whenever in business hours presented, to the extent of the sum deposited. The promise was a sufficient consideration moving from the bank and gave it ownership of the drafts.
The finding of the referee that the bank acquired the drafts by fraud is sufficiently supported by the evidence. On April 18, in the forenoon, Lee, the president, then in New York, found out, if he did not know it before, that the bank could not go on. He telegraphed his cashier not to make drafts, but did not countermand his previous order to keep open the bank.
Although the fraudulent practices charged were those of the president of the bank, nevertheless, under the decisions in this State, it would seem they are imputable to the bank. Whether as a matter of law the fraud of its agent, is, strictly speaking, chargeable to the bank or not, it is permissible so to regard it and plead it for the sake of the remedy by action, for it comes to the same thing when a party seeks to recover from a corporation property obtained by fraud, whether the fraud was- that of an agent or his principal. The party’s right is to recover to the extent which the corporation has received.
The plaintiffs, when they deposited the drafts, transferred title to the bank. The question is whether the transfer is revocable. Generally, contracts obtained by fraud are voidable at the election of the party deceived. The abstract right is, however, sometimes defeated and from various circumstances, as, for example, the delay of the party injured, his inability to restore what he obtained on the contract, or because *412 other persons have innocently acquired interests that depend on cue contract. But here no circumstances have been proved that can take away the plaintiffs’ right to rescind. The plaintiffs moved promptly to recover their drafts; they had received neither" bill, certified check, nor anything else on the credit of the deposit, and had nothing for which substantial restitution was to be made to the bank, as a preliminary to their action ; nor, as I think, had any other person acquired any interest under the contract, or in the drafts or the deposit, that should prevent rescission. The plaintiffs were able to follow, identify and recover the drafts or proceeds, separate from other funds of the bank, and free from specific claims of individuals.
The plaintiffs deposited the drafts on April 13, about half an hour before the bank finally closed its doors. On April 14 the bank remained closed, and its actual condition was that of such utter insolvency that from that time it existed for purposes only of liquidation.
And here the defendant makes the important objection to the plaintiffs’ recovery, that the rights of all parties upon the insolvency of the bank became fixed ; that the law under which the bank had existence forbids every kind of preference, and that, consequently the plaintiffs must be left to share equally with the other creditors (U. S. Rev. St. § 5242). It is unquestionably the policy of the national banking law, since all the creditors cannot be paid in full, to preserve the entire assets of an insolvent bank for equitable distribution ; and this policy would, itself, have the force of law sufficient to enable and require the courts to declare against any transaction or proceeding that tends to defeat the object of the statute, although it may not violate the letter.
The banking law, however, does not declare that all property in possession of the defaulting bank shall *413 be kept for distribution, but that the assets belonging to the bank shall be so preserved. It is urged by the defendant that, if the respondents can succeed upon the ground of fraud, then the other creditors, who placed sums of money with the bank after acts of insolvency, can also recover their deposits. Other customers, doubtless, made deposits on the same day, some of paper and some of money, and it would appear to be no greater hardship for the plaintiffs to contribute to the general loss than for them.
The question, however, is not one as to hardships, but the question is, whether there exists any reason why a person who deposits in a national bank, that is at the time insolvent, and who had been induced to place his money there by a fraudulent holding out of the bank by its officers as sound, may not rescind. Is there anything in the policy of the laws of congress, or in the nature and constitution of the bank, and the relations of customers who mutually contribute to sustain the business of the bank, that prevents a rescission by a customer for fraud? Many persons may make the bank their common depository, and do that in view of the law that, in case of insolvency, all deposits shall be kept for ratable division, and that every creditor is to contribute to the loss in proportion to his claim, still, can it be said that each customer acquires an interest in the deposits of the others, or that their deposits are made upon an implied contract for mutual benefit in case of the failure of the bank ?
I do not think such an interest or agreement among the customers results from their mutual dealings with the bank, or that because they are deemed to know the legal constitution of the bank and the policy of the law in relation to insolvency, that they can be held to have waived their right to impeach a contract for fraud. It would be an unsafe rule that should declare the frauds of a bank beyond remedy, because it has *414 become insolvent. The argument that the plaintiffs cannot maintain their action for the reason that, if they can, the sequence would be that every customer who deposited money after acts of insolvency could likewise recover, is not, I think, a valid one, and the fault in the argument consists in its being assumed that depositors of money could not recover for the like fraud. It might happen, and probably would happen, in ninety cases out of a hundred, that circumstances would arise that would prevent a rescission by the depositor. His cash may have become mixed with the common fund, or partly or wholly appropriated, or diverted so as not to be distinguishable. As a general statement it may be true, when a deposit either of drafts or money is made and credit entered in favor of the depositor, that, in legal view, the deposit is merged in the general funds of the bank. Ordinarily, I suppose that to be the legal result. That is the result where the transaction is not voidable. The proposition, however, is but the expression of the legal doctrine that excludes the idea that the depositor keeps any interest in the specific subject of the deposit after the bank has received it. Still, I believe the law refrains from laying down a rule that makes the condition of a person, dealing with a national bank, different from what it is when dealing with natural persons, so far as concerns his right to rescind a contract for fraud. If he can rescind,—that is, if the circumstances of fact exist, which the law ordinarily recognizes as necessary to the exercise of that right,—he may rescind even as against an insolvent national bank. If he has not received anything which can be restored to the bank only by his act,—if, in fact, the deposit remains distinctly separate from the general funds, if it has not been subsequently incumbered or affected by the transactions of the bank, and no circumstances of the kind *415 that ordinarily prevent rescission have intervened,— then his remedy remains.
The conclusion reached, therefore, is that the judgment entered on the report of the referee in favor of the plaintiffs should be affirmed.